UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAYEN BIAR DIING,

          Plaintiff,

v.

RONALD E. GRAESER,

          Defendant.

                                   /

Case No. 1:10-cv-1191

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant's "motion to dismiss and/or for summary judgment pursuant to Fed. R. Civ. P. 12(b)(6) and 56, and 42 U.S.C. § 1997e(a) (docket no. 19).

    **I.**    **Plaintiff's claims**

Plaintiff has filed a pro se complaint against Dr. Graeser setting forth the following allegations. On March 29, 2008, plaintiff suffered injuries in a motor vehicle accident. Compl. at ¶ 7. He was treated at St. Mary's Hospital where, in "April 2008," an Inferior Vena Cava filter ("IVC filter") was placed in a blood vessel. *Id.* at ¶ 8. The IVC filter was to be temporarily placed in the blood vessel to prevent blood clots. *Id.* at ¶ 9. On April 2, 2008, while still a patient at St. Mary's Hospital, plaintiff was arrested and charged with a felony related to the accident. *Id.* at ¶ 11. The same month, after surgery was performed on plaintiff's ankle, he was discharged from St. Mary's Hospital and sent to the Kent County Jail. *Id.* at ¶ 12. On May 28, 2008, plaintiff pled guilty to "said felony," at which time the Michigan Department of Corrections (MDOC) assumed

jurisdiction over him. *Id.* at ¶ 13.[1]  On July 1, 2008, the MDOC transferred plaintiff to the [Charles Egeler] Reception and Guidance Center (RGC) in Jackson, Michigan. *Id.* at ¶ 14.  Plaintiff informed staff at RGC that his IVC filter needed to be removed, but was told to wait. *Id.* at ¶ 15.

In August 2008, plaintiff was transferred from RGC to the Muskegon Correctional Facility (MCF). *Id.* at ¶ 16.  He immediately contacted the health center but was told to wait and that he would see a doctor at a later time. *Id.*  On October 8, 2008, plaintiff sent health care kites concerning the IVC filter removal. *Id.* at ¶ 17.  Plaintiff was called out by Dr. Graeser, who told plaintiff to wait for the removal of the filter. *Id.*  Plaintiff saw Dr. Graeser on November 25, 2008, who advised plaintiff "that it is to [sic] dangerous to remove, please increase your intake of water.: *Id.* at ¶ 18.  On December 13, plaintiff filed a grievance charging Dr. Graeser with deliberate indifference to his serious medical needs. *Id.* at ¶ 20.

After pressing the issue with MDOC staff, plaintiff met with a surgeon (Dr. Prough) on October 19, 2009. *Id.* at ¶¶ 21-28.  At that time, Dr. Prough told plaintiff that he had been approved for surgery and would be sent to the University of Michigan Hospital for "special surgery" to remove the IVC filter. *Id.* at ¶ 29.  After plaintiff met with Dr. Prough to schedule the surgery, Prison Health Services (PHS) intervened and refused to pay for the surgery stating that "it is more risky to remove device [sic] than to leave it in." *Id.* at ¶ 30.

It appears that plaintiff was an inmate at the Lakeland Correctional Facility (LCF) at this time. *Id.* at ¶¶ 25-27.  On October 26, 2009, a physician at LCF, Robert D. Lacy, D.O., entered a progress note on plaintiff's situation as follows:

---

[1] MDOC records reflect that plaintiff pled guilty to *two* felonies: operating while intoxicated causing serious injury; and operating while intoxicated causing death. *See* Offender Tracking Information System report for Mayen Biar Diing MDOC No. 692107 at www.mich.gov/corrections (docket no. 20-2).

> The alternative treatment plan for removing plaintiff's removable filter is to leave it in place. The response from PHS was that "Risk of removal appears to exceed risk of leaving in place" and an Up-To-Date article was provided. I could not find any information in this article comparing the risks of removal vs. not removing. The closest thing I found said, to paraphrase, "Since you can't always get them out, don't put in a removable filter unless your [sic] okay with possibly having to leave it in permanently."

*Id.* at Exh. E (docket no. 1-5).

Given this history, and PHS' decision not to allow surgery due to the risk, plaintiff blames Dr. Graeser for his predicament:

> 33. That this, of course only stands to reason, that if Graeser would have acted expeditiously and had Plaintiff sent back to [St. Mary's Hospital] or [an] MDOC approved hospital <u>before</u> the supposed duration period <u>had passed</u> it would never had come to this end.
>
> 34. That, as a result of Graeser's deliberate indifference to Plaintiff's serious medical problem, PHS is refusing to pay for the removal of the IVC Filter and using "scare tactics."

*Id.* at ¶¶ 33-34 (emphasis in original).

Plaintiff has alleged three causes of action. First, that Dr. Graeser violated the Eighth Amendment by "not acting expeditiously to have Plaintiff sent back to St. Mary's Hospital (SMH) or [an] MDOC approved hospital before the supposed duration period had passed." *Id.* at ¶ 44. Second, that Dr. Graeser violated the Eighth Amendment by failing "to provide for the removal of the IVC Filter inside Plaintiff, and [to] protect Plaintiff from future life-threatening harm." *Id.* at ¶ 45. Third, that "[t]he actions of [Dr. Graeser] in placing Plaintiff in a life-threatening lead to death position [sic] were done . . . in violation of the Eighth Amendment. . ." *Id.* at ¶ 46. Plaintiff seeks compensatory damages in the amount of $4,000,000.00 and punitive damages in the amount of $40,000.00. *Id.* at pp. 8-9. Plaintiff also seeks declaratory relief, as well as a permanent

3

injunction directing defendant and non-party PHS to "[i]mmediately arrange for Plaintiff to receive surgery by special surgeon [sic] to remove the IVC Filter lodged inside Plaintiff." *Id.* at p. 8.

## II.     Procedural background

Defendant filed an answer, after which this court entered a case management order on April 7, 2011. *See* Answer (docket no. 11); Case Management Order (docket no. 13). The case management order regulated discovery and required that dispositive motions be filed by not later than September 6, 2011. *See* Case Management Order (docket no. 13). On May 3, 2011, defendant filed the present dispositive motion. Shortly thereafter, Magistrate Judge Ellen S. Carmody appointed plaintiff counsel (Attorney Jolene Weiner-Vatter) pursuant to the Court's *Pro Bono* Plan guidelines. *See* Order Appointing Counsel (docket no. 23). Ms. Weiner-Vatter filed a response to the motion. *See* Response (docket no. 27). After the close of discovery, and within the time allowed by the case management order, defendant filed a second dispositive motion. *See* "Motion to dismiss and/or for summary judgment" (docket no. 30). Counsel did not file a response to this motion. The court scheduled a status conference on December 6, 2011, to discuss certain issues that arose regarding the appointment of counsel. At that time, defendant clarified that the sole issue addressed in the present motion is whether the complaint should be dismissed for failure to exhaust administrative remedies against Dr. Graeser. *See* Amended Case Management Order (docket no. 36). Accordingly, this report and recommendation is limited to that issue.[2]

---

[2] The court will address defendant's second dispositive motion (docket no. 30), which seeks summary judgment on the merits of plaintiff's Eighth Amendment claim, in a separate Report and Recommendation.

### III. Dr. Graeser's motion to dismiss

#### A. Legal Standard

Defendants seek to dismiss plaintiff's action against Drs. Gelabert and Lacy pursuant to Fed. R. Civ. P. 12(b)(6) for lack of exhaustion and failure to state a claim.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

#### B. Failure to exhaust

##### 1. Exhaustion requirement

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if

the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied 129 S. Ct. 733 (2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially

noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D.Mich. June 22, 2006) ("In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394 (W.D. Mich. March 5, 2009) (taking judicial notice of MDOC prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion); *White v. Correctional Medical Services, Inc.*, No. 1:08-cv-277, 2009 WL 596473 (W. D. Mich. March 6, 2009) (same).

Taking judicial notice of a prisoner's administrative grievance proceeding is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204.

       **3.**    **Plaintiff's grievances**    Defendant has identified three grievances filed by plaintiff: MCF-9-01-18-28i ("18") (docket no. 19-4); MRF 10-10-1287-12d ("1287") (docket no. 19-3); and MRF 10-10-1288-12d ("1288") (docket no. 19-2).

       **a.**    **Grievance 18**

This grievance filed at MCF grieved an incident occurring on November 25, 2008, the date when plaintiff met with Dr. Graeser. According to the grievance, Dr. Graeser advised

plaintiff that it was too dangerous to remove the IVC filter because is had been in his neck so long. Plaintiff stated that the "MCF medical findings" were inconsistent with the original doctor's instructions from St. Mary's Hospital, i.e., "[w]ho specifically told me I had to have the clot removed." The grievance was rejected at Step I because plaintiff did not attempt to resolve the issue prior to filing the grievance. The record does not include a copy of the MDOC's Step II response, which presumably denied the grievance. In its response to plaintiff's Step III appeal, the MDOC first determined that the appeal was untimely, but proceeded to review the grievance, finding that "the responses provided at Steps One and Two adequately address the merits of the main issue grieved."

Under these circumstances, where the MDOC overlooked plaintiff's procedural shortcomings and reviewed the merits of the grievance, the Sixth Circuit has held that the court should consider the grievance properly exhausted for purposes of the PLRA. "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).[3]

---

[3] The Sixth Circuit provided the following rationale:

> In that setting, the State, as the promulgator of the rules, has had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served. When the State nonetheless decides to reject the claim on the merits, who are we to second guess its decision to overlook or forgive its own procedural bar? The rules serve the *State's* interests: its interest in creating a prison grievance system, its interest in reviewing a complaint before another sovereign gets involved and its interest in deciding when to waive or enforce its own rules. And the State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim.

*Reed-Bey*, 603 F.3d at 325 (emphasis in original).

The record reflects that after its initial rejection of Grievance 18, the MDOC addressed the merits of the grievance. Under the Sixth Circuit's decision in *Reed-Bey*, this court is essentially bound by the MDOC's waiver of the prisoner's procedural default irregularities and the state agency's decision to address the merits of the grievance as though it had been properly exhausted. Accordingly, the court should consider this claim as "properly exhausted" under the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Reed-Bey*, 603 F.3d at 325; *Sullivan*, 316 Fed. Appx. at 470.

        **b.**     **Grievance 1287**

This grievance contested an incident which occurred on September 28, 2010 at a different facility, Macomb Correctional Facility (MRF). According to the grievance, plaintiff met with Dr. Noronha on that date about difficulty in swallowing, bleeding in his throat, a previous diagnosis of cancer, and being diagnosed with tumors in his throat on December 7, 2009. Plaintiff alleged that Dr. Noronha ordered an x-ray of his chest, did not order an x-ray of his "neck or throat where the cancer is located," and told plaintiff that the State had no money to treat the cancer in his neck or "the tumor/mass" in his brain. Plaintiff asserted that Dr. Noronha refused to provide care in violation of his Eighth Amendment rights. The Step I response indicated that plaintiff was seen by a nurse three days before the incident (September 25, 2010) and on the date of the incident (September 28, 2010) and that no follow-up was needed. Plaintiff appealed to Step II, which was denied. In the Step II response, the MDOC's respondent noted plaintiff's medical history from July 1, 2008 through November 14, 2010, which reflected that plaintiff's claims of tumors are not substantiated by CT scans and plaintiff's bizarre statement that he wanted to have the IVC filter removed because "it's really a tracking device because he is a terrorist." Plaintiff appealed to Step

III, where his grievance was also denied. While Grievance 1287 appears to be exhausted, it is not directed at Dr. Graeser. Accordingly, this grievance is not relevant to the present action.

### c. Grievance 1288

This grievance involves another aspect of plaintiff's meeting with Dr. Noronha on September 28, 2010 at MRF, raising a similar issue, i.e., plaintiff's alleged diagnosis of "a brain tumor / mass according to a CT Scan taken by a hospital in Muskegon, Michigan" and Dr. Noronha's failure to provide him with an MRI to review the tumor. In the Step I response, the MDOC's respondent stated that plaintiff was seen by a doctor on September 28, 2010 and that "no mass / tumor verified [sic]." Defendant did not provide a copy of the Step II response. However, the record reflects that plaintiff appealed to Step III, where his grievance was denied. While Grievance 1288 appears to be exhausted, it is not directed at Dr. Graeser. Accordingly, this grievance is not relevant to the present action.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that Dr. Graeser's motion to dismiss on grounds of lack of exhaustion (docket no. 19) be **GRANTED** as to the issues raised in Grievances 1287 and 1288, and **DENIED** as to the issues raised in Grievance 18.


Dated: January 27, 2012          /s/ Hugh W. Brenneman, Jr.
                                 HUGH W. BRENNEMAN, JR.
                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).