UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAYEN BIAR DIING,

                Plaintiff,

v.

RONALD E. GRAESER,

                Defendant.

_____/

Case No. 1:10-cv-1191

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant's "Motion to dismiss and/or for summary judgment pursuant to Fed. R. Civ. P. 56" (docket no. 30).

### I.      Plaintiff's claims

Plaintiff filed a pro se complaint against Dr. Graeser setting forth the following allegations. On March 29, 2008, plaintiff suffered injuries in a motor vehicle accident. Compl. at ¶ 7. He was treated at St. Mary's Hospital, where, in "April 2008" an Inferior Vena Cava filter ("IVC filter") was placed in a blood vessel. *Id.* at ¶ 8. The IVC filter was to be temporarily placed in the blood vessel to prevent blood clots. *Id.* at ¶ 9. On April 2, 2008, while still a patient at St. Mary's Hospital, plaintiff was arrested and charged with a felony related to the accident. *Id.* at ¶ 11. In April 2008, after surgery was performed on plaintiff's ankle, he was discharged from St. Mary's Hospital and sent to the Kent County Jail. *Id.* at ¶ 12. On May 28, 2008, plaintiff pled guilty to a felony, at which time the Michigan Department of Corrections (MDOC) assumed jurisdiction over

him.  *Id.* at ¶ 13.[1]  On July 1, 2008, the MDOC transferred plaintiff to the Reception and Guidance Center (RGC) in Jackson, Michigan.  *Id.* at ¶ 14.  Plaintiff informed staff at RGC that his IVC filter needed to be removed, but was told to wait.  *Id.* at ¶ 15.

In August 2008, plaintiff was transferred from RGC to the Muskegon Correctional Facility (MCF).  *Id.* at ¶ 16.  He immediately contacted the health center but was told to wait and that he would see a doctor at a later time.  *Id.*  On October 8, 2008, plaintiff sent health care kites concerning the IVC filter removal.  *Id.* at ¶ 17.  Plaintiff was called out by Dr. Graeser, who told plaintiff to wait for the removal of the filter.  *Id.*  Plaintiff saw Dr. Graeser on November 25, 2008, who advised plaintiff "that it is to [sic] dangerous to remove, please increase your intake of water."  *Id.* at ¶ 18.  On December 13, plaintiff filed a grievance charging Dr. Graeser with deliberate indifference to his serious medical needs.  *Id.* at ¶ 20.

After pressing the issue with MDOC staff, plaintiff met with a surgeon (Dr. Prough) on October 19, 2009.  *Id.* at ¶¶ 21-28.  At that time, Dr. Prough told plaintiff that he had been approved for surgery and would be sent to the University of Michigan Hospital for "special surgery" to remove the IVC filter.  *Id.* at ¶ 29.  After plaintiff met with Dr. Prough to schedule the surgery, Prison Health Services (PHS) intervened and refused to pay for the surgery stating that "it is more risky to remove device [sic] than to leave it in."  *Id.* at ¶ 30.

It appears that plaintiff was an inmate at the Lakeland Correctional Facility (LCF) at this time.  *Id.* at ¶¶ 25-27.  On October 26, 2009, a physician at LCF, Robert D. Lacy, D.O., entered a progress note on plaintiff's situation as follows:

---

[1] MDOC records reflect that plaintiff pled guilty to *two* felonies: operating while intoxicated causing serious injury; and operating while intoxicated causing death.  *See* Offender Tracking Information System report for Mayen Biar Diing MDOC No. 692107 at www.mich.gov/corrections (docket no. 20-2).

The alternative treatment plan for removing plaintiff's removable filter is to leave it in place.  The response from PHS was that "Risk of removal appears to exceed risk of leaving in place" and an Up-To-Date article was provided.  I could not find any information in this article comparing the risks of removal vs. not removing.  The closest thing I found said, to paraphrase, "Since you can't always get them out, don't put in a removable filter unless your [sic] okay with possibly having to leave it in permanently."

*Id.* at Exh. E (docket no. 1-5).

Given this history, and PHS' decision not to allow surgery due to the risk, plaintiff blames Dr. Graeser for his predicament:

33.     That this, of course only stands to reason, that if Graeser would have acted expeditiously and had Plaintiff sent back to [St. Mary's Hospital] or [an] MDOC approved hospital <u>before</u> the supposed duration period <u>had passed</u> it would never had come to this end.

34.     That, as a result of Graeser's deliberate indifference to Plaintiff's serious medical problem, PHS is refusing to pay for the removal of the IVC Filter and using "scare tactics."

*Id.* at ¶¶ 33-34 (emphasis in original).

Plaintiff has alleged three causes of action.  First, that Dr. Graeser violated the Eighth Amendment by "not acting expeditiously to have Plaintiff sent back to St. Mary's Hospital (SMH) or [an] MDOC approved hospital before the supposed duration period had passed."  *Id.* at ¶ 44.  Second, that Dr. Graeser violated the Eighth Amendment by failing "to provide for the removal of the IVC Filter inside Plaintiff, and [to] protect Plaintiff from future life-threatening harm."  *Id.* at ¶ 45.  Third, that "[t]he actions of [Dr. Graeser] in placing Plaintiff in a life-threatening lead to death position [sic] were done . . . in violation of the Eighth Amendment. . .."  *Id.* at ¶ 46.  Plaintiff seeks compensatory damages in the amount of $4,000,000.00 and punitive damages in the amount of $40,000.00.  *Id.* at pp. 8-9.  Plaintiff also seeks declaratory relief, as well as a permanent

3

injunction directing defendant and non-party PHS to "[i]mmediately arrange for Plaintiff to receive surgery by special surgeon [sic] to remove the IVC Filter lodged inside Plaintiff." *Id.* at p. 8.

Given the complexity of plaintiff's claim, the court appointed plaintiff pro bono counsel. *See* Order (docket no. 18). The court entered an amended case management order which set forth a two-step process for addressing pre-trial issues. First, the court would address defendant's motion to dismiss for lack of exhaustion. Second, if necessary, the court would address defendant's motion for summary judgment. If plaintiff's claim survived summary judgment, then the court would allow additional discovery, including depositions, "one or two physical examinations of the plaintiff," and the possible preparation of expert reports. *See* Amended Case Management Order (docket no. 36).

The court granted defendant's motion to dismiss as to all claims except for those raised in Grievance No. MCF-9-01-18-28i ("Grievance 18). *See* Report and Recommendation (docket no. 40); Order Adopting Report and Recommendation (docket no. 43). The court summarized plaintiff's exhausted claim in Grievance 18 as follows:

> This grievance filed at MCF grieved an incident occurring on November 25, 2008, the date when plaintiff met with Dr. Graeser. According to the grievance, Dr. Graeser advised plaintiff that it was too dangerous to remove the IVC filter because is had been in his neck so long. Plaintiff stated that the "MCF medical findings" were inconsistent with the original doctor's instructions from St. Mary's Hospital, i.e., "[w]ho specifically told me I had to have the clot removed."

Report and Recommendation at pp. 8-9 (docket no. 40).

## II.    Dr. Graeser's motion for summary judgment

### A.    Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any

4

right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

      **B.**      **Discusssion**

Plaintiff has alleged that Dr. Graeser was deliberately indifferent to his serious medical needs. It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect

that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Medical records reflect that plaintiff underwent surgery on March 31, 2008, for placement of an inferior vena cava (IVC) filter to aid in the treatment of his abdominal trauma, pelvis fractures and pain. *See* Saint Mary's Health Care records (docket no. 31-1). Plaintiff was not in MDOC custody at that time. *See* Compl. at ¶¶ 11-12. On November 17, 2008, plaintiff sent a medical kite complaining that he "[w]ants filter removed." MDOC Health Kite (Nov. 17, 2008) (docket no. 31-2 at p. 5). It is undisputed that defendant, Dr. Graeser, examined plaintiff at MCF on November 25, 2008. Prior to the evaluation, Dr. Graeser placed a telephone call to Christopher Massin, D.O., the surgeon who placed the IVC filter in plaintiff. Dr. Graeser Aff. at ¶¶ 7-8 (docket no. 30-4). The clinical progress notes reflect that this conversation occurred on November 24, 2008. *See* MDOC Progress Notes (Nov. 25, 2008) (docket no. 31-2 at p. 6). At that time, Dr. Massin advised Dr. Graeser "that removal of IVC filters can be done with low risk up to six weeks

7

after instillation [sic]," but "that after seven months [i.e., by October 2008], the filter anchors into the blood vessel wall and the risks associated with removal are too great."   Dr. Graeser Aff. at ¶¶ 9-10.

In Dr. Graeser's medical opinion, which was consistent with Dr. Massin's opinion, "removal of the IVC filter constituted far too great a risk" and "removal of the IVC filter at that time would be inconsistent with the applicable medical standard of practice and care pursuant to [his] medical judgment." *Id.* at ¶¶ 15-16.

Dr. Graeser evaluated plaintiff on November 25, 2008 due to his complaints of having the IVC filter. *Id.* at ¶ 11.   Plaintiff did not show any signs of medical distress during the evaluation. *Id.* at ¶ 13.   Consistent with both Dr. Massin's opinion and his own medical judgment, Dr. Graeser advised plaintiff that "it was far too dangerous to remove the IVC filter at that time." *Id.* at ¶¶ 9-10, 12, 15-16.   Upon learning that the IVC  would not be removed due to the health risks, plaintiff "became irate and demanded to have his filter removed."  *Id.* at ¶ 14.

In his response, plaintiff pointed out that an MDOC Progress Note from July 7, 2008, completed by RN Elizabeth A. Cornell at RGC, indicated that the nurse received a telephone call from St. Mary's Hospital in Grand Rapids advising that plaintiff had an IVC inserted on March 31, 2008, that it needed to be removed at this time, and that the caller was faxing over pertinent information that day for review by a prison doctor. *See*  MDOC Progress Note (July 7, 2008) (docket no. 37-1).   RN Cornell noted that plaintiff should have an appointment to see a higher level medical provider on July 8, 2008. *Id.*  While this evidence reflects that someone at RGC was aware of plaintiff's situation in July 2008, there is no evidence that Dr. Graeser was involved in plaintiff's treatment at that time.

Viewing the facts in the light most favorable to plaintiff, the court concludes that Dr. Graeser was not deliberately indifferent to plaintiff's serious medical need related to the removal of the IVC filter.  When Dr. Graeser evaluated plaintiff at MCF in late November 2008, the doctor faced limited medical options for removing the IVC filter.  Dr. Graeser investigated the situation, spoke with the treating surgeon, and through the exercise of his medical judgment concluded that the medical risks to plaintiff were too great to attempt to remove the IVC filter at that time.  The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).  This  action falls in the latter category.  Plaintiff's deliberate indifference claim arises from Dr. Graeser's exercise of his medical judgment.  While plaintiff disagrees with the doctor's medical judgment and wants to have treatment contrary to that judgment, this disagreement does not rise to the level of a federal constitutional claim.  "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004), quoting *Westlake*, 537 F.2d at 860 n. 5.  *See Woodberry v. Simmons*,  146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"); *Wright v. Genovese*, 694 F.Supp.2d 137, 155 (N.D.N.Y. 2010)

("[d]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment").  Accordingly, Dr. Graeser is entitled to summary judgment on plaintiff's remaining Eighth Amendment claim.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that Dr. Graeser's motion for summary judgment (docket no. 30) be **GRANTED** and that this action be dismissed.


Dated:  November 5, 2012                      /s/ Hugh W. Brenneman, Jr.
                                              HUGH W. BRENNEMAN, JR.
                                              United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).